UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TONY DEWAYNE MARTIN #572749          CIVIL ACTION NO. 25-cv-011 SEC P

VERSUS                                JUDGE TERRY A. DOUGHTY

DERRICK PHELPS ET AL                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Tony Dewayne Martine ("Plaintiff") is a self-represented inmate who filed this excessive force action against two police officers. Before the court is a Motion to Dismiss (Doc. 16) by Officers Derrick Phelps and Coby Barton that raises several defenses. The motion was noticed for briefing, but Plaintiff has not filed any opposition. For the reasons that follow, it is recommended that the motion to dismiss be granted by (1) dismissing all claims based on the alleged failure to administer Miranda warnings and (2) dismissing the excessive force claims based on the Heck doctrine.

### Relevant Facts

Plaintiff alleged in his original complaint that he was visiting a woman's home in Doyline, Louisiana when the woman told him that he experienced a seizure. She called 911. Plaintiff contends the seizure caused a memory loss for him to the extent that, according to the police report, he did not know his own name. (The report states that Plaintiff gave a false name.)

Plaintiff alleged that he managed to get on his motorcycle, and Deputy Derrick Phelps pursued him. Phelps performed a PIT maneuver on the motorcycle, causing Plaintiff to crash and suffer several injuries that included broken bones. Plaintiff admits that he was "clearly not mentally stable." He accuses Phelps of using excessive force in violation of the constitution.

The court directed Plaintiff to file an amended complaint and provide more information about his claims. He repeated his claim that the use of the PIT maneuver violated the constitution. He added a contention that he was arrested without being read his Miranda rights. The arrest was said to be for aggravated flight and possession of Schedule II (less than two grams). Plaintiff reported that he was awaiting trial.

The motion to dismiss is accompanied by the police report that was referenced in Plaintiff's original complaint and a transcript of a guilty plea hearing. The police report by Officer Phelps states that he was dispatched to assist with ambulance services on a medical call. The patient (Plaintiff) refused care and gave a false name. Plaintiff's mother told the first responders that his name was Tony Martin. Phelps asked the ambulance personnel if they needed the medical refusal on video, and they said yes.

Officer Phelps went inside the house in an effort to get a recorded refusal, but Plaintiff had departed through the back door. Phelps called out to Plaintiff to stop, but he refused. Plaintiff put on his jacket and helmet, mounted a motorcycle, and sped away at a high rate of speed.

Officer Phelps pursued Plaintiff and saw him travelling at approximately 60 miles per hour in a 25-mph zone. Phelps activated his emergency lights and siren. Plaintiff

pulled off as though he were going to stop, but when Phelps arrived, Plaintiff accelerated away. Phelps recorded that he was in pursuit at 70 mph in a 25-mph zone. Plaintiff then turned on another street and reached speeds of 80 mph in a 35-mph zone, passed in a no passing zone, and eventually reached speeds of up to approximately 120 mph. He ran through stop signs, almost struck two pedestrians who were walking their dog, and continued on in such a manner for six minutes spanning 11 miles, all of which was recorded.

Phelps wrote that he maintained contact with Lt. Coby Barton by phone, and Barton instructed him to attempt a Precision Intervention Technique or PIT maneuver if the opportunity presented itself.[1] Plaintiff slowed his motorcycle to approximately 20 mph as he negotiated an intersection. Phelps slowed to approximately 20 to 25 mph and contacted the back tire of the motorcycle, causing Plaintiff to fall from it and land upright in a seated position. Plaintiff was then handcuffed and taken into custody. A search of Plaintiff revealed items that included a syringe and suspected drugs. Plaintiff was taken to the hospital. It was determined that his motorcycle was stolen out of Texas.

Plaintiff was charged by bill of information with possession of Schedule II CDS (less than two grams), with the substance being fentanyl. He was also charged with aggravated flight from an officer where human life is endangered, in violation of La. R.S.

---

[1] A typical PIT maneuver is when police use the front of their vehicle to strike the bumper or other rear area of a pursued vehicle and cause it to spin out. It is used around the country, with law enforcement policies varying as to when it may be used and at what speeds. There is no consensus on how and when it should be employed. Margaret L. R. DuBose, Police Chases and Pit Maneuvers: Examining the Role of Officer Conduct in Pursuit-Related Felony Murder Convictions, 40 Ga. St. U. L. Rev. 425, 431 (2024).

14:108.1. Flight from an officer is a misdemeanor committed when the driver of a motor vehicle intentionally refuses to bring the vehicle to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe the driver has committed an offense.

Aggravated flight from an officer, a felony, is the intentional refusal to stop under those circumstances wherein human life is endangered. Subsection D states that circumstances wherein human life is endangered shall be any situation where the operator of the vehicle commits at least two of six listed acts. The bill of information charged Plaintiff with committing the acts of (1) exceeding the posted speed limit by at least 25 miles per hour and (2) failing to obey a stop sign or a yield sign.

Plaintiff appeared in court, represented by counsel, in July 2025. He stated his desire to enter a nolo contendere plea to both charges. The judge engaged Plaintiff in the required colloquy and sentenced him to agreed terms of two years at hard labor on each count, to be served consecutively, with credit for time served. The factual basis presented at the hearing included that law enforcement initiated visual and audible signals for Plaintiff to stop, but he instead fled and exceeded the posted speed limit by more than 25 miles per hour and ran stop signs.

**Prescription**

The use of force incident took place on December 26, 2023. Defendants argue that Plaintiff's complaint is untimely because this claim is subject to Louisiana's one-year limitations period that was in effect at the relevant time and Plaintiff did not file his complaint until January 3, 2025.

The problem with this argument is that Plaintiff was incarcerated when he mailed his complaint to the court. The Fifth Circuit has long held that a pro se prisoner litigant's Section 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). This "mailbox rule" recognizes that the inmate loses control over when his complaint is mailed once he hands it over to corrections officials.

Plaintiff's complaint did arrive at the federal court on January 3, 2025. It was, however, signed by Plaintiff and dated December 17, 2024. The latest date associated with Plaintiff's possession of the complaint is December 23, 2024, which he placed with his signature on a note regarding the IFP application that was mailed with the complaint. The note alerted the court that jail staff members lost or misplaced a required form. Even that date was within the one-year timeliness window.

The statute of limitations is an affirmative defense that "places the burden of proof on the party pleading it." Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011) (en banc). A Rule 12(b)(6) motion based on a limitations defense is proper only if the grounds for the defense "clearly appear on the face of the plaintiff's complaint." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir. 1997). But under federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." Frame, 657 F.3d at 239-40.

There are not sufficient facts on the face of the complaint to satisfy the movants' burden with respect to a limitations defense. It cannot be determined, absent additional evidence, when Plaintiff tendered his complaint to prison officials. The dates that Plaintiff

wrote on his documents indicate that it could have been tendered in a timely fashion. Accordingly, the movants may not prevail on this defense by a Rule 12(b)(6) motion.

**Miranda Violation**

Plaintiff stated in his amended complaint that he was "arrested without being read his Miranda rights" for the two crimes of which he was convicted. To the extent Plaintiff is attempting to assert a claim under 42 U.S.C. § 1983 based on the lack of a Miranda warning, his allegations fail to state an actionable claim. Vega v. Tekoh, 142 S.Ct. 2095, 2101 (2022) ("The question we must decide is whether a violation of the Miranda rules provides a basis for a claim under § 1983. We hold that it does not.").

**The Heck Doctrine**

Under Heck v. Humphrey, 114 S.Ct. 2364 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts that gave rise to the charge for which he was convicted, unless the plaintiff proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006), quoting Heck, 114 S.Ct. at 2372. Heck requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Ballard, 444 F.3d at 396.

A case that arose in similar circumstances, Connors v. Graves, 538 F.3d 373 (5th Cir. 2008), is helpful. The plaintiff tried to rob a bank, fled the scene, and fired his weapon at pursuing officers before one of them fired his weapon and hit the plaintiff in the arm. Mr. Connors filed a Section 1983 suit for excessive force; he claimed that he never fired at the officers. Meanwhile, Mr. Connors pleaded guilty to discharging a firearm from a motor vehicle, a felony under La. R.S. 14:94(E).

The Fifth Circuit held that his claims were barred by Heck because a judgment in his favor on claims of excessive force and illegal seizure would necessarily imply the invalidity of his conviction for discharging a firearm from a motor vehicle. The excessive force claim would require him to prove that the officers used deadly force that was objectively unreasonable under the circumstances. See Graham v. Connor, 109 S.Ct. 1865 (1989). An element of the crime to which Connors pleaded guilty was discharging a firearm from a vehicle on a public street with the intent to injure, harm, or frighten another human. By pleading guilty, he essentially admitted that the officers acted reasonably in using deadly force to make his arrest. The court cited La. R.S. 14:20(2), which allowed officers to use deadly force to prevent a violent or forcible felony involving danger to life or of great bodily injury if they reasonably believed that such an offense was about to be committed and that their action was necessary for its prevention. The officers had witnessed Connors commit a potentially deadly felony and, given their high-speed pursuit still in progress, they could reasonably conclude that he was about to commit another felony. Heck barred his excessive force claim until such time as he proved that his conviction had been reversed or invalidated.

Heck bars Plaintiff's excessive force claim for similar reasons. To prevail on a Section 1983 excessive force claim, Plaintiff must prove that the officers' use of force was objectively unreasonable under the circumstances. By pleading guilty to aggravated flight from an officer, Plaintiff essentially admitted that the officers acted reasonably in using deadly force to effectuate his arrest. Under La. R.S. 14:20(2), police officers are entitled to use deadly force "for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm" if they reasonably believe "that such an offense is about to be committed and that such action is necessary for its prevention."

Plaintiff's underlying charge involved an element that human life was endangered, so a finding that the officers used excessive force would necessarily imply that there was no such danger and thus, his conviction was invalid. Heck bars his excessive force claim under these circumstances. Other district courts have applied Heck in similar settings where a plaintiff asserted an excessive force claim related to his arrest for aggravated flight from an officer. See, e.g., Riggs v. Jordan, 2022 WL 2092868, *3 (W.D. La. 2022); Baranco v. Wilson, 2018 WL 3076724, *6-7 (M.D. La. 2018); Stamps v. Outz, 2017 WL 3492701 (W.D. La. 2017). To the extent Plaintiff asserts an excessive force claim under state law, Louisiana also applies the Heck rationale to tort claims. Price v. City of Bossier, 841 Fed. Appx. 650 (5th Cir. 2021).

Defendants' unopposed motion to dismiss should be granted by dismissing with prejudice any claims based on the alleged failure to administer Miranda warnings. The only other claims are based on excessive force, and they are barred by Heck at this time. The preferred order of dismissal in a Heck case is that the claims are dismissed with

prejudice until such time as the Heck conditions may be met. Price, citing Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 16) be granted by dismissing with prejudice all claims based on the alleged failure to administer Miranda warnings and dismissing with prejudice all remaining claims until such time as the Heck conditions may be met.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of October, 2025.

_____
Mark L. Hornsby
U.S. Magistrate Judge